Thurman D. ALBRIGHT, et al., Appellants (Plaintiffs Below),

v.

EDWARD D. JONES & CO., Appellee (Defendant Below).

No. 25A03–9011–CV–496.

Court of Appeals of Indiana, Third District.

May 30, 1991.

**1330**

Donald J. Tribbett, Scott L. Starr, Starr Austen & Tribbett, Logansport, for appellants.

John Michael Clear, Bruce C. Oetter, Leo J. Asaro, Steven A. Nieters, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., Edward O. Delaney, Stephen K. Smith, Barnes & Thornburg, Indianapolis, Lawrence M. Brown, Brown, Rakestraw & Kehoe, Rochester, for appellee.

STATON, Judge.

Appellants bring this appeal from the entry of an order compelling arbitration, raising the issue of whether the arbitration clauses in agreements between appellants and appellee Edward D. Jones & Company (Jones) require arbitration of the controversy presently being litigated. As an additional issue, Jones challenges the appropriateness of the trial court's certification of the order compelling arbitration as a final appealable order pursuant to Indiana Rules of Procedure, Trial Rule 54(B).

We reverse.

A brief review of the facts of the underlying dispute serves to place this appeal in context. The appellants (hereinafter the "Account Agreement Plaintiffs") are ten of a number of plaintiffs who allegedly purchased interests in certain oil and gas limited partnerships in Petro–Lewis Corporation through Jones, who touted itself as a brokerage firm who catered to the small-town "conservative investor," specializing in "peace of mind investments." After each investor took a substantial loss on his investment, this action was brought against Jones. The action was based on actual fraud, constructive fraud, violation of the Indiana Securities Act,[1] and violation of the Indiana RICO statute.[2] In support of the action, the Account Agreement Plaintiffs alleged that their losses were due to their reliance on various misrepresentations by Jones, including assertions that the Petro–Lewis investment was "conservative," "safe," and "decidedly low risk," when in fact the investments were risky and nearly impossible to liquidate.

Jones moved to compel arbitration of the claims and to stay the claims asserted by the Account Agreement Plaintiffs on the basis of arbitration clauses contained in "Full Service Account" agreements with Jones executed after the transactions which are the subject of this litigation.

1. IND.CODE 23–2–1–1 *et seq.*

2. IC 35–45–6–1 *et seq.*

Jones asserted that the language in the arbitration agreements applied retroactively as well as prospectively to require that all disputes between the parties to the agreement were to be settled by arbitration. The accounts in question were all opened prior to the execution of the agreements upon which Jones relies. The trial court granted Jones's motion, entering an order compelling arbitration. The order was certified pursuant to Trial Rule 54(B) and this appeal ensued.[3]

We address first the procedural issue raised by Jones.

## I.

### Certification of Order

Jones argues that this appeal should be dismissed because the trial court erroneously certified the order compelling arbitration. It contends that the order compelling arbitration did not terminate all proceedings in the trial court, as it merely stayed the claims pending arbitration and did not resolve any issue raised in the complaint. Moreover, it notes that the order only required eleven of the numerous plaintiffs to submit to arbitration. Thus, it argues that certification was improper.

Jones's contention leads us to an examination of Trial Rule 54(B). Since Trial Rule 54(B) follows the federal rule, we have found it instructive to examine federal authorities on issues involving the rule where Indiana precedent is lacking. *Legg v. O'Connor* (1990), Ind.App., 557 N.E.2d 675. Federal Rule of Civil Procedure 54(b) permits the trial court to certify an order as appealable if it finds that it possesses the requisite degree of finality and disposes of at least a single substantive claim. *Id.* Generally, the standard for determining what constitutes finality under the federal rule is the same as that utilized in 28 U.S.C. § 1291. Wright, Miller & Kane, *Federal*

*Practice & Procedure:* Civil 2d § 2656 at 51–52.

▆▆▆ Prior to its legislative resolution in the federal system,[4] the issue of whether an order enforcing or refusing to enforce an arbitration agreement was appealable was aptly characterized as "baffling." *Id.*, § 3914 at 556. While it was settled that an order compelling arbitration or refusing to compel arbitration was final if the sole object of the suit was to compel arbitration, the cases were split as to whether an order compelling arbitration was final when it arose out of a lawsuit where other relief was demanded as well. *Id.,* § 3914.34 at 413–414. At least one commentator expressed the opinion, however, that finality could be established through certification pursuant to F.R.C.P. 54(b) if the arbitration issue is "genuinely separate" from the other issues. *Id.*, §§ 3914 at 556, n. 54; 3914.-34 at 414–415.

Our First District addressed the question of whether an order compelling arbitration is appealable in *Evansville–Vanderburgh Sch. Corp. v. Evansville Teachers Assoc.* (1986), Ind.App., 494 N.E.2d 321. The court stated the settled federal rule that an order compelling arbitration is an appealable final order in an action solely for that purpose. However, it cited a Federal case which held that an order which both compels arbitration and stays proceedings pending arbitration, although not technically final, fulfills the finality requirement for purposes of appeal. *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.* (6th Cir.1983), 706 F.2d 155, 158. It also cited *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Griesenbeck* (1967), 21 N.Y.2d 688, 287 N.Y.S.2d 419, 234 N.E.2d 456, which held that the mere fact that the motion to compel arbitration was made in the course of a pending action did not impair its finality. The complaint in *Evansville–Vander-*

---

3. Although the order pertained to the claims of eleven of the plaintiffs in the action, only ten of the plaintiffs are parties to this appeal. The claims of Elizabeth R. Hillis have been voluntarily dismissed.

4. In 1988, Congress amended the Federal Arbitration Act, adding a new appeals provision

which establishes whether certain orders regarding arbitration may be appealed. Under the new section, orders compelling arbitration are not appealable. 9 U.S.C. § 15. This action is not governed by the Federal Act—see section II of this opinion, *infra.*

*burgh* also involved a second count seeking enforcement of the contract and damages. While the *Evansville–Vanderburgh* court found that the order compelling arbitration was appealable because jurisdiction of the interlocutory appeal had been accepted pursuant to Appellate Rule 4(B)(6), the court intimated that the order would have been appealable as a final order if the trial judge had certified it pursuant to Trial Rule 54(B). 494 N.E.2d at 324.

Our examination of the foregoing authorities leads us to hold that an order compelling arbitration, when properly certified by the trial court, is a final appealable order despite the existence of other claims in the lawsuit if the arbitration order is severable from the rest of the claims in the lawsuit. In the present case, the trial court, citing *Evansville–Vanderburgh,* found:

> that this Court's Order Upon Arbitration Issues entered February 15, 1990, disposes of a distinct definite branch of this case, namely the request for an order compelling arbitration, leaving no further question to be determined as to that issue, that the effect of the Court's Order Upon Arbitration Issues entered February 15, 1990, is to compel certain Plaintiffs to arbitrate their claims precluding their right to participate in the trial against Defendant which is scheduled in March, 1991, that withholding the right to appeal and compelling the parties to go through useless arbitration is counterproductive, and that there is no just reason for the delay of an appeal of the Order Upon Arbitration Issues entered February 15, 1990.

Record, p. 302. The trial court did not err in certifying the order for appeal.

## II.

### Arbitration Agreements

#### A. Choice-of-Law

■ Initially, there is some disagreement as to what law applies in the construction of the arbitration agreements in question. Jones argues that federal law applies, and cites considerable federal precedent favoring its contention that arbitration is required. The Account Agreement Plain-

tiffs, on the other hand, argue that the choice-of-law clause in the account agreements should control. The agreements executed by the Account Agreement Plaintiffs, clearly drafted by Jones, are not all identical—there are three different variations. However, each contained the following clause:

> This agreement and its enforcement shall be governed by the laws of the State of Missouri and its provisions shall be continuous; shall cover individually and collectively all accounts which the undersigned may open or reopen with you, and shall insure [sic] to the benefit of your present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever, and of the assigns of your present organization, or any successor organization, and shall be binding upon the undersigned, and/or estate, executors, administrators and assigns of the undersigned.

Jones argues that the Account Agreement Plaintiffs waived any argument as to the applicability of Missouri law by failing to raise the argument at the trial court level. Although the Account Agreement Plaintiffs did not cite the specific principles of Missouri law upon which they rely on appeal, they did note the choice-of-law provision in a memorandum of law to the trial court and argued that choice-of-law problems were inappropriate for settlement in arbitration. Moreover, the Account Agreement Plaintiffs are not raising a new issue on appeal. They merely are advancing a new legal argument in support of the original issue raised at the trial court level—the propriety of compelling arbitration under the contract. Thus, we will address their contentions with respect to Missouri law.

■ In support of their argument that the choice-of-law clause in the agreements' controls, the Account Agreement Plaintiffs cite *Volt Information Sciences Inc. v. Board of Trustees* (1989), 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488. In *Volt,* the Supreme Court held that state law was not pre-empted by the Federal Arbitration Act where the parties have agreed that their

arbitration agreement will be governed by state law. Jones cites numerous lower court cases which either support this proposition or were decided before *Volt.* As we find *Volt* controlling, we will look to Missouri law in our construction of the contracts.

### B. The Missouri Notice Statute

The Account Agreement Plaintiffs contend that the arbitration agreements failed to comply with Missouri Revised Statutes § 435.460, enacted in 1980. That statute provides:

Each contract subject to the provisions of [the Missouri Uniform Arbitration Act] shall include adjacent to, or above, the space provided for signatures a statement, in ten point capital letters, which read [sic] substantially as follows: "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."

The logical purpose of this section is to notify parties that their contract includes a provision for arbitration. *State ex rel. Tri–City Const. Co. v. Marsh* (1984), Mo. App., 668 S.W.2d 148, 153. It evinces a legislative concern that the voluntary nature of arbitration agreements be assured. *Hefele v. Catanzaro* (1987), Mo.App., 727 S.W.2d 475, 476. The statute applies only to agreements made subsequent to August 13, 1980, the effective date of the Act. *Id.;* Mo.Rev.Stat. § 435.445. This provision has been applied by the Missouri courts to render an arbitration clause unenforceable where the contract did not contain the requisite statement. *Hefele, supra.*

An examination of the agreements in question reveals an absence of the requisite language, despite the fact that each was executed after 1980. In addition, the arbitration clauses are in normal type, and are not set off in any way in the contracts to call attention to them. Thus, the arbitration clauses would not be enforceable under Missouri law.

Jones cites *Bunge Corp. v. Perryville Feed and Produce, Inc.* (1985), Mo., 685 S.W.2d 837 and *Local 2, Int'l Brotherhood*

*of Elec. Workers v. Anderson Underground Const. Inc.* (8th Cir.1990), 907 F.2d 74 in support of its contention that the statute does not extend to arbitration agreements which are within interstate commerce. Neither of these cases involved a choice-of-law clause, so their pre-emption analysis would not apply in this case. *Volt, supra.*

Having concluded that the agreement is not in compliance with the Missouri statute, the proper remedy under Missouri law appears to be to remand for a hearing to determine whether the Account Agreement Plaintiffs had actual notice of the arbitration clauses. *Forest Hills Country Club v. Weber* (1985), Mo.App., 691 S.W.2d 361, *transfer denied.* But see *Hefele, supra* (reversed order compelling arbitration without remand for hearing to determine actual notice). However, we find a hearing unnecessary in this case, since we agree with the Account Agreement Plaintiffs' contention that the terms of the agreements do not include the transactions which are the subject of this lawsuit.

### C. Terms of the Agreement

Jones argues that the terms of the agreement indicate that the arbitration clause is to be applied retroactively. This precise issue was resolved against Jones in *Frates v. Edward D. Jones & Co* (1988), 233 Mont. 377, 760 P.2d 748. In *Frates,* the plaintiff filed a complaint against Jones containing nearly identical allegations as the instant case regarding the sale of Petro–Lewis and NRM securities. The trial court denied Jones' motion to stay litigation and to compel arbitration and Jones appealed. The Supreme Court of Montana affirmed, holding that the trial court properly found that the language in the agreement was prospective only, and did not apply to the transactions in question, which were entered before the execution of the agreement. As in this case, the contract stated, "[t]his agreement ... shall cover ... all accounts which the undersigned may open or reopen with you...." *Id.* 760 P.2d at 751. The court also noted that any ambiguity would be construed strictly against

Jones as the drafter of the contract. *Id.* 760 P.2d at 752. The court distinguished federal authority permitting the retroactive application of an arbitration agreement.

We agree with the Supreme Court of Montana's conclusion in *Frates* that the clear language of the agreement requires prospective application of the arbitration clauses. Jones contends that *Frates* is an anomaly, and cites numerous federal cases, each of which involved language which evinced an intent that the agreement was to be applied retroactively.[5] Such is not the case here. We are of the opinion that the Missouri courts would not apply the arbitration clause retroactively.

Accordingly, we reverse the decision of the trial court compelling arbitration and staying the pending litigation and remand for a trial on the merits.

HOFFMAN, P.J., and MILLER, J., concur.

---

5. Missouri law, not federal law, is governing here. *See* section II(A) of this opinion, *supra.* Thus federal cases construing the Federal Arbi-

tration Act are persuasive, not binding authority.